# IN THE COURT OF APPEALS OF IOWA

No. 17-1170
Filed July 5, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JOSEPH L. BARTLETT,**
        Defendant-Appellant.
_____


Appeal from the Iowa District Court for Cass County, Kathleen A. Kilnoski (motion to dismiss), Jeffrey L. Larson (trial), and Gregory W. Steensland (sentencing), Judges.


Joseph Bartlett appeals from judgment and sentence entered following a bench trial. **CONVICTIONS AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED WITH DIRECTIONS.**


Mark C. Smith, State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.


Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

Joseph Bartlett appeals from judgment and sentence entered following a bench trial on the minutes of evidence and Exhibit 1, body and dash-cam videos.

**I. Background Facts and Proceedings.**

On July 3, 2016, at 1:20 a.m., Deputy Benjamin Bartholomew was informed law enforcement officers were in pursuit of a vehicle traveling eastbound on Highway 92 by the Cass County Communications Center. The vehicle was traveling at speeds around 85 m.p.h. Deputy Bartholomew was further informed the vehicle had travelled through Griswold and was continuing eastbound on Highway 92. Deputy Bartholomew placed his vehicle on the westbound lane of Highway 92 with lights flashing and placed stop sticks in the eastbound lane one-half mile west of Highway 71. The driver being pursued attempted to drive around the sticks, lost control, and exited the road into the ditch on the north side of the highway. The driver then continued east through a field next to the highway.

Deputy Bartholomew drove eastbound on the highway stopping on the side of the road at the intersection of Highway 92 and Highway 71. The driver of the vehicle exited the field back onto Highway 92, striking the rear driver's side of Deputy Bartholomew's marked patrol car, causing damages to the patrol car in excess of $1000. The driver continued on, also failing to stop at the intersection's stop sign. The driver drove on to Tucson Road entering into Lyman. A Pottawattamie County Deputy preformed a precision immobilization technique (PIT) maneuver. Deputy Bartholomew's vehicle was in the westbound lane of the road to block the driver. The driver attempted to avoid the PIT maneuver and struck the front of Deputy Bartholomew's patrol vehicle. This caused further

damage to the vehicle. The driver failed to stop at the intersection of Tucson Road and Highway 71, where he turned southbound on Highway 71 passing Deputy Kyle Quist, who followed the vehicle for about two miles until the vehicle became disabled and stopped near Victoria Road on Highway 71. The driver was arrested at 1:34 a.m. While being placed under arrest, the driver—identified as Bartlett—stated he had run because he was "high." Bartlett was transported to Pottawattamie County, where he was charged with crimes in that county.

Pottawattamie County deputies stated Bartlett had been traveling 90 m.p.h. on Main Street in Griswold, and eighty miles per hour on Highway 92. Deputy Quist reported Bartlett had been travelling seventy-five miles per hour on Highway 71. An auto body shop provided a $6640 quote (parts and labor) to repair the damage to Deputy Bartholomew's patrol car. The driver-side damage and the front-end damage each exceeded $1000.

On August 19, 2016, complaints were filed in Cass County asserting Bartlett had committed two counts of assault on persons in certain occupations, in violation of Iowa Code section 708.3A(2) (2016); two counts of criminal mischief in the second degree, in violation of section 716.4(1); and one count of eluding, in violation of section 321.279(3). On August 22,[1] a Cass County warrant for Bartlett's arrest was filed.

After serving some time in Pottawattamie County, Bartlett was transferred to Montgomery County where there was an active warrant for his arrest unrelated to the charges in this case. On October 24, while Bartlett was in the Montgomery

---

[1] Bartlett's motion to dismiss contains a typographical error that the arrest warrant issued on "October 22, 2016."

County Jail, Cass County faxed a copy of the Cass County arrest warrant to the Montgomery County Sheriff's Department.

On January 10, 2017, the Cass County Sheriff personally served Bartlett with the Cass County warrant while Bartlett was in the Montgomery County Jail. The return of service was filed on January 11—the same date Bartlett appeared before a Cass County magistrate.

On January 18, 2017, a five-count trial information was filed in the Cass County District Court. Counts I and II relate to the first time Bartlett's vehicle hit Deputy Bartholomew's patrol car. Count I (assault on persons engaged in certain occupations) asserts Bartlett,

> on the 3rd day of July, 2016, in Cass County, Iowa, did intend to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act against a peace officer by a person who knows that the person against whom the assault is committed is a peace officer and who uses or displays a dangerous weapon in connection with the assault, to-wit; used a motor vehicle to strike the driver's side of a marked patrol vehicle.

Count II (criminal mischief) alleges Bartlett, using a motor vehicle, did "knowingly and intentionally damage" the driver's side door of a marked patrol car causing damage exceeding $1000. Counts III and V relate to the second time Bartlett's vehicle hit Deputy Bartholomew's patrol car. Count III (criminal mischief) alleges Bartlett, using a motor vehicle, did "knowingly and intentionally damage" the front of a marked patrol car. Count V (assault on persons engaged in certain occupations) asserted Bartlett

> did intend to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act against a peace officer by a person who knows that the person against whom the

assault is committed is a peace officer and who uses or displays a dangerous weapon in connection with the assault, to wit; used a motor vehicle to strike a marked patrol vehicle.

In Count IV (eluding), the State asserted Bartlett eluded a marked law enforcement vehicle. Trial was scheduled for March 7.

On January 19, Bartlett filed a motion to dismiss asserting he was arrested on July 3, 2016, or no later than October 24. He argued that because no indictment had been filed within forty-five days of either date, Iowa Rule of Criminal Procedure 2.33(2)(a) was violated.

The district court denied the motion on January 25, concluding:

> A trial information must be filed within [forty-five] days of a defendant's arrest. [Bartlett] maintained that he was arrested on July 3, 2016. Alternatively, he urged that he was served with the arrest warrant on October 24, 2016, when he was given a copy of the fax. The court concludes that [Bartlett] was not served with the arrest warrant when he was given a photocopy of the fax. [Bartlett] was in the custody of the Montgomery County sheriff on October 24 and was not served with the Cass County arrest warrant until January 10, 2017. The trial information was timely filed within [forty-five] days of his arrest.

Bartlett entered into a plea agreement on February 13, but later filed a motion in arrest of judgment challenging the adequacy of the guilty-plea proceeding. The court allowed Bartlett to withdraw the plea. Bartlett thereafter agreed to a bench trial, and the district court found Bartlett guilty as charged on all counts.

On appeal, Bartlett argues the district court erred in denying his motion to dismiss. Bartlett also argues the trial court misapplied the law and made insufficient findings of fact to sustain the convictions. He also contends that if this court nevertheless determines there is sufficient evidence in the record to sustain

the verdicts, trial counsel was ineffective in failing to preserve error on the court's lack of sufficient findings of fact.

## II. Scope and Standards of Review.

We review rulings on speedy-indictment challenges for correction of errors at law. *State v. Williams*, 895 N.W.2d 856, 860 (Iowa 2017) (citing *State v. Penn-Kennedy*, 862 N.W.2d 384, 386 (Iowa 2015)). "We will uphold the district court's finding of guilt so long as there is substantial supporting evidence in the record." *State v. Petithory*, 702 N.W.2d 854, 856 (Iowa 2005).

With respect to ineffective-assistance-of-counsel claims, because they have their basis in the Sixth Amendment, our review is de novo. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008).

## III. Discussion.

*A. Speedy Indictment.* Bartlett acknowledges there would be no speedy-indictment violation under the analysis set out in *Williams*, 895 N.W.2d at 867.[2] However, Bartlett asserts *Williams* was not decided until five months after the district court issued its ruling in this case, and under then-existing law the motion to dismiss should have been granted. We are not persuaded.

The forty-five-day period to bring an indictment applies only to the public offense for which the defendant was arrested and any lesser-included offenses.

---

[2] *See Williams*, 895 N.W.2d at 867 (holding the speedy indictment rule "is triggered from the time a person is taken into custody, *but only when the arrest is completed by taking the person before a magistrate for an initial appearance*" (emphasis added).

Bartlett asks that the *Williams* holding be modified "to take into account inordinate delays in scheduling an initial appearance." This issue will not be addressed because it is first raised on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

*State v. Sunclades*, 305 N.W.2d 491, 494 (Iowa 1981) ("[T]he time period applies only to the 'public offense' for which the defendant was arrested, rather than to all offenses arising from the same incident or episode."), *overruled on other grounds by Williams*, 895 N.W.2d at 856; *see also Penn-Kennedy*, 862 N.W.2d at 390 (same) *overruled on other grounds by Williams*, 895 N.W.2d at 856. This court has previously noted:

> Our cases have held that the speedy indictment rule is activated when a person is arrested for the commission of a public offense and does not extend to different offenses which have not resulted in arrest. *See State v. Edwards*, 571 N.W.2d 497, 499-500 (Iowa Ct. App. 1997); *see also State v. Dennison*, 571 N.W.2d 492, 497 (Iowa 1997) (holding a defendant's arrest for driving while revoked and having an open container did not bar the State from filing OWI charge, stemming from the same incident, more than forty-five days later). The fact that police have probable cause to arrest the defendant for another crime does not change the speedy-indictment calculus. *Edwards*, 571 N.W.2d at 500 ("An arrest for one offense based upon probable cause but accompanied by other motives does not convert the arrest into a different offense for purposes of applying the speedy indictment rule.").

*State v. Miller*, 818 N.W.2d 267, 272 (Iowa Ct. App. 2012). The district court found Bartlett was not arrested on the current charges until January 10, 2017, and the information was filed eight days later on January 18. We find no error in the denial of the motion to dismiss.

**B. Sufficiency of the Evidence.** Bartlett also asserts the court erred in determining he acted with the necessary intent to sustain the convictions for Counts I, II, III, and V.

Addressing Counts I and V (assault on a police officer with a deadly weapon—in this case a motor vehicle), the district court wrote:

> "[T]o commit an assault, the offender need only intend to do the act that constitutes the assault." *Bacon v. Bacon*, 567 N.W.2d 414 [,

417] (Iowa 1997). In this case, the first instance of contact [occurred when] Bartlett struck the driver's side of Deputy Bartholomew's marked patrol vehicle. According to the minutes of testimony Bartlett intentionally swerved his vehicle to avoid the stop sticks placed on the road by Deputy Bartholomew. This action resulted in the harmful touching of Bartlett's car striking Deputy Bartholomew's vehicle causing damage. Deputy Bartholomew as a member of the Cass County Sheriff's office is a peace officer as defined in Iowa Code [section] 801.4(11)(a). He was in a marked patrol car and as such Bartlett had knowledge that Deputy Bartholomew was a peace officer.

On the basis of these grounds the court finds Joseph Bartlett GUILTY on Count I of Assault on a Person Engaged in Certain Occupations.

. . . .

As to [Count V], Mr. Bartlett intentionally attempted to avoid the PIT maneuver executed by officers by turning around on the road way. He then proceeded to drive directly into the front end of Deputy Bartholomew's vehicle and continued driving. As such, Mr. Bartlett intentionally acted when he drove into the front of the vehicle, and for the reasons expressed under Count I Deputy Bartholomew is within the class of persons contemplated by the statute and Mr. Bartlett was aware of that fact.

Therefore the Court finds Joseph Bartlett GUILTY on Count V of Assault on a Person Engaged in Certain Occupations.

The district court erred in finding that assault as charged in Counts I and V were general-intent crimes requiring only an intentional act. *See State v. Heard*, 636 N.W.2d 227, 231 (Iowa 2001) (assault under the first two alternatives of Iowa Code section 708.1(2) requires proof of specific intent); *see also State v. Fountain*, 786 N.W.2d 260, 265 (Iowa 2010) ("We held [in *Heard*] that the definition of assault contained in the Iowa Code required an action done with the 'intent to achieve some additional consequence so as to qualify as a specific-intent crime.'" (citation omitted)); *State v. Bedard*, 668 N.W.2d 598, 600-601 (Iowa 2003).

As for Counts II and III, the trial court found Bartlett guilty of criminal mischief because "Bartlett was not within his rights to attempt to avoid the stop sticks," which "caused him" to strike Deputy Bartholomew's vehicle (Count II). And the court

found Bartlett "was not within his rights to attempt to avoid the officers pursuing his vehicle" and "his attempt to avoid the PIT maneuver executed by officers, caused" Bartlett to strike the vehicle (Count III). The district court also erred in finding criminal mischief as charged in Counts II and III was a general-intent crime requiring only an intentional act. *See State v. Chang*, 587 N.W.2d 459, 461 (Iowa 1998) ("We conclude that the district court erred in instructing the jury that the State need only establish that the defendant intended to do the act that damaged the property. The instruction should have required the State to establish that the defendant intended to cause the damage."); *State v. Overton*, No. 16-1301, 2017 WL 2665257, at *2 (Iowa Ct. App. June 21, 2017) ("The [criminal mischief] statute requires the specific intent to damage, deface, alter, or destroy property.").

The State concedes the errors noted above, and acknowledges that the trial court's findings of fact are not sufficient to support a finding of specific intent on Counts I, II, III, and V.[3] Notwithstanding, the State asserts "Bartlett is not entitled to relief from his convictions," having failed to move for a new trial seeking enlargement of the court's findings and conclusions. *See State v. Miles*, 346 N.W.2d 517, 519 (Iowa 1984) ("A defendant in a bench-tried criminal case who

---

[3] The State's brief provides:

> The State also agrees that the district court's findings of fact on Counts I and V would not be sufficient to support a finding that Bartlett struck the deputy's vehicle with the intent to cause pain or injury to the deputy, with the intent to result in physical contact that would be insulting or offensive to the deputy, or with the intent to place the deputy . . . in fear of physical contact that will be injurious or offensive. Likewise, the State agrees that the district court's findings on Counts II and III were not sufficient to support a finding that Bartlett drove into Deputy [Bartholomew]'s vehicle with the intent to damage, deface, alter, or destroy the vehicle, as required to establish his guilt for criminal mischief.

has not filed a motion for new trial seeking amendment or enlargement of the court's findings and conclusions cannot rely on appeal on the insufficiency of those findings and conclusions to support the court's decision so long as the evidence would support the necessary additional findings and conclusions.").

Anticipating the State's preservation-of-error argument, Bartlett contends trial counsel was ineffective in failing to challenge the court's findings. "To establish an ineffective-assistance-of-counsel claim, a defendant must typically show that (1) counsel failed to perform an essential duty and (2) prejudice resulted." *State v. Keller*, 760 N.W.2d 451, 452 (Iowa 2009).

Bartlett maintains there is insufficient evidence to support the convictions and, therefore, trial counsel's failure to challenge the findings constitutes a breach of an essential duty.

> In some cases an attorney who fails to file a motion for new trial seeking amendment or enlargement of findings or conclusions may breach an essential duty. Generally, however, because the omission does not preclude attack on the sufficiency of the evidence itself or reliance on other legal error, the omission will not result in prejudice equivalent to denial of a fair trial or a miscarriage of justice.

*Miles*, 346 N.W.2d at 519. Thus, we must review the record and determine whether there is sufficient evidence of specific intent to sustain Counts I, II, III, and V. If there is substantial evidence, Bartlett cannot prove the requisite prejudice, and his ineffectiveness claim fails. *See Fountain*, 786 N.W.2d at 266 (noting an ineffectiveness claim fails if the defendant is unable to prove either element of the test).

Iowa Criminal Jury Instruction 200.2 reads:

> "Specific intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind.
>
> Because determining the defendant's specific intent requires you to decide what [he] [she] was thinking when an act was done, it is seldom capable of direct proof. Therefore, you should consider the facts and circumstances surrounding the act to determine the defendant's specific intent. You may, but are not required to, conclude a person intends the natural results of [his] [her] acts.

Iowa Bar Ass'n, *Iowa Crim. Jury Instructions* 200.2; *see Fountain*, 786 N.W.2d at 264; *State v. Chatterson*, 259 N.W.2d 766, 769-70 (Iowa 1977).

In *State v. Taylor*, No. 15-2128, 2017 WL 935066, at *2 (Iowa Ct. App. Mar. 8, 2017), the defendant was involved in a high-speed chase with law enforcement and deliberately rammed an officer's car head on. The defendant in *Taylor* challenged the sufficiency of the proof of his assaultive intent. 2017 WL 935066, at *2. We upheld his conviction of assault on a police officer with a dangerous weapon, noting the officers' testimony and the jurors' opportunity to watch dash-camera videos of the defendant's maneuvers, from which they

> could judge for themselves whether his actions showed a specific intent to cause the officer pain or injury or place the officer in fear of undesirable contact. It was reasonable for the jurors to infer from Taylor's aggressive driving that he intended to injure the officer or place the officer in fear of offensive contact.

*Id.*

Here, the minutes of evidence include a statement from Deputy Bartholomew that "[o]n July 3rd, 2016, Joseph Bartlett was involved in a motor vehicle pursuit where he had already intentionally struck my patrol car while entering an intersection from a field." At the time of collision, Deputy Bartholomew was parked. The videos neither confirm nor disprove that the act was done

intentionally, and based upon the stipulated record, we can only conclude the Bartlett intentionally caused the damage as there is no evidence to the contrary.

The minutes of evidence include a statement by Deputy Quist, stating in part,

> Pottawattamie County Deputy Frain then conducted a PIT maneuver on the vehicle as it started to head into Lyman. The vehicle spun around. Deputy Bartholomew was in the westbound lane to block the vehicle from continuing on. The driver then rammed Deputy Bartholomew's vehicle in the front end. I was blocking the eastbound lane.

The minutes of evidence also include an explanation by Deputy Bartholomew that after the PIT maneuver, "Bartlett's vehicle spun around and he continued back east, striking my marked patrol car head on at approximately 0132 hours and causing damage that exceeded $1000 to the front of the vehicle."

We have viewed the videos and cannot agree that Bartlett "rammed" Bartholomew's patrol car or collided with it "head on." Rather, Deputy Bartholomew was driving his vehicle closer to Bartlett in an obvious attempt to block Barlett's ability to escape and Bartlett attempted to steer away from Bartholomew's vehicle. Yet, we agree Bartlett intended to take action to continue to elude the officers including bumping or colliding into patrol vehicles much like a bumper car ride at a carnival except this ride was unlawful and dangerous.

We conclude the evidence is sufficient to prove Bartlett intentionally struck Deputy Bartholomew's car twice with intent to inflict damage to it to aid in his escape. *See Chang*, 587 N.W.2d at 461. Although it is clear the criminal mischief offenses were incidental to Bartlett's efforts to flee, the evidence supports the

conclusion that Bartlett intentionally crashed his vehicle into Deputy Bartholomew's vehicle on two occasions to assist his attempted escape.

We are, however, not able to conclude Bartlett had the specific intent to commit an assault under these unique facts. We would describe Bartlett's driving as evasive and erratic but not "aggressive." The pursuit was on a two-lane unlit road. Bartlett's vehicle struck stop sticks set out by Deputy Bartholomew, at which point Bartlett's vehicle went into a cornfield. Officers pursued Bartlett—Deputy Bartholomew traveled along the paved road and came to a stop. At a crossing, Bartlett drove out of the cornfield and his vehicle struck the rear driver's side of Deputy Bartholomew's vehicle and continued on. The police car video shows a very slight jarring of the Deputy Bartholomew's vehicle. Deputy Bartholomew reported his car had been hit, and he then followed the other officers, who continued to pursue Bartlett's vehicle. A few moments later, Bartlett can be seen swerving to avoid a different police vehicle in the road. Bartlett's vehicle then attempted to avoid Deputy Bartholomew's patrol car but struck the front of Deputy Bartholomew's vehicle in Bartlett's efforts to escape. Both vehicles were traveling at slow speeds. There is no question Bartlett would drive anywhere—in a field or ditch or collide into a patrol car, but the collisions were incidental to Bartlett's efforts to flee. There is insufficient direct or circumstantial evidence to support the conclusion that Bartlett had the specific intent to commit an assault on a law enforcement officer. If the evidence had supported the conclusion that Bartlett did aggressively drive towards, or purposely drive head on, crashing into Deputy

Bartholomew's patrol car we may have reached a different result.[4]  Consequently, Bartlett's trial counsel had a duty to challenge the sufficiency of the trial court's findings in regard to Counts I and V and Bartlett was prejudiced by counsel's failure to do so.

We affirm convictions on Counts II and III and reverse the convictions on Counts I and V.  We remand for resentencing on Count II, III, and IV.

**CONVICTIONS AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED WITH DIRECTIONS.**

---

[4] The videos at best only show a very slight jarring as Bartlett was exiting the field.  At that time, Deputy Bartholomew was parked and clearly could have been struck in an aggressive fashion that might have reflected a specific intent to cause pain, injury, or cause contact that would be painful injurious, insulting or offensive.  *See* Iowa Code § 708.1(1).